(46 South. 352.)

No. 16,880.

STATE ex rel. UNITY INDUSTRIAL LIFE INS. & SICK BENEFIT ASS'N v. MICHEL, Secretary of State.

(March 30, 1908.  Rehearing Denied April 27, 1908.)

1. INSURANCE — INDUSTRIAL LIFE—AUTHORITY TO DO BUSINESS—STATUTORY PROVISIONS.

Section 3 of Act No. 65, p. 102, of 1906 after the word "except," is inconsistent with and contrary to part of Act No. 105, p. 132, of 1898.

2. SAME.

Industrial life insurance companies cannot be required to comply with both Act No. 105, p. 132, of 1898, in that respect that it conflicts with Act No. 65, p. 101, of 1906, and also comply with Act No. 65, p. 101, of 1906.

3. SAME.

In that respect that there is conflict, Act No. 105, p. 132, of 1898, was enacted to safeguard the interest of shareholders in "mutual companies" organized for beneficial purposes.

4. SAME.

Act No. 65, p. 101, of 1906, was enacted to enable the poor to organize companies to come to the relief of their members in case of sickness and for funeral expenses.

5. MANDAMUS—PROCEEDINGS—PRESUMPTION.

Legitimately conducted (the court will not assume that such a company is not legitimately conducted; it will be time enough to so conclude when such a case will be presented) the members derive no profit from the corporation.

6. SAME.

The beneficial mutual companies and the stock insurance companies have to comply with Act No. 105, p. 132, of 1898. No good reason suggests itself in matter of interpretation to require industrial life insurance companies to comply with both acts, a requirement which these companies will not be able to comply with, as the revenues would not justify the expenditures.

7. SAME.

The law-making authority did not intend indirectly to hinder the forming of companies it directly authorized.

8. SAME.

"Life industrial companies," as defined in the last-cited statute, is not far reaching in its

scope as relates to returns. If there are manipulators who use them improperly and wrongly, and if there are no laws to prevent their abuse, it should receive further legislative attention.

(Syllabus by the Court.)

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; Harvey Felix Brunot, Judge.

Mandamus by the state, on relation of the Unity Industrial Life Insurance & Sick Benefit Association, against John T. Michel, Secretary of State. Judgment for respondent, and relator appeals. Reversed and judgment rendered in favor of relator.

John Dymond, Jr., for appellant. Walter Guion, Atty. Gen. (Frank Edward Rainold, of counsel), for appellee.

BREAUX, C. J. Relator sued for a writ of mandamus to be directed against John T. Michel, Secretary of State, to compel him to issue to it (relator) a certificate and license under the provisions of the statute to enable it to conduct and carry on an industrial and sick benefit business.

The relator was incorporated by charter on March 14, 1907.

Attorney for relator forwarded to the State Treasurer two state bonds, amounting together to $2,000, deposited as required by Act No. 65, p. 101, of 1906, and at the same time forwarded copies of charter and of affidavits and exhibits.

The affidavit stated that relator had taken over the policies of two other companies that had lapsed.

There was also an affidavit forwarded taken by the president of the corporation, showing that there were 2,072 outstanding industrial policies of the corporation; none of these policies for an amount over $500, and none providing for a weekly cash benefit for disability for over $20.

The president stated in this affidavit that his company and the other companies absorbed by the relator had, at some time prior to the application just referred to, collected in premiums through the absorbed companies the sum of $38,553.75 in cash, afterward disbursed through these corporations.

The State Treasurer declined to retain these bonds, and stated in returning them that he acted upon the advice of the Secretary of State, who stated to him that he would not issue the certificate applied for by relator.

The relator, a short time thereafter, was informed by the Secretary of State that he must decline to issue the license to give authority to it (relator) to do business as an insurance company, as it had failed to comply with section 16 of article 1 of Act No. 105, p. 141, of 1898.

It was shortly thereafter that this mandamus was sued for, in which the relator claims that the Legislature intended to create a new branch of insurance and did not intend to put a stop to the industrial life insurance business. That as these companies are organized for the benefit of the poor, it is not reasonable to suppose that the insured were expected by the Legislature to provide the sum of $25,000 from their scanty earnings in order to obtain the very limited insurance possible under the plan of organization of the statute.

The defense is that relator failed to follow the terms of its own charter and the requirements of the statute; that the industrial life insurance corporations are bound to follow Act No. 105, p. 132, of the General Assembly of 1898, Act No. 114, p. 161, of 1898, Act No. 65, p. 101, of 1906, and Act No. 59 p. 83, of 1898; that the companies organized on the mutual plan must comply with section 16 of Act No. 105, p. 141, of 1898, before a license will be issued to them; that they must show subscription in due and satisfactory form in an amount not less than $25,000—of this amount, $10,000 to be paid in cash, and the remainder secured by notes of solvent makers with good collateral.

Respondent avers that this was not done; and avers, further, that no agreement was entered into in good faith, and that no cash and no notes have ever been received from relator.

In addition and in a separate point, defendant urges that relator is attempting to violate the statute by offering to carry on the illegal business hitherto conducted by the George D. Geddes Benevolent & Mutual Association, the Philadelphia National Relief Association, and the George D. Geddes Undertaking & Embalming Company, Ltd., corporations, unauthorized and not licensed by this or any other state to carry on the business of life insurance; that these three concerns are insolvent.

After having seriously considered the issues between relator and defendant, we have arrived at the conclusion that Act No. 65, p. 101, of 1906, is inconsistent with and contrary to Act No. 105, p. 132, of 1898, in so far as that the former act relates to the $25,000 before mentioned.

The following is the section of Act No. 105, p. 142, of 1898, which the defendant takes as controlling in this case:

"Every mutual company organized upon the mutual plan shall exhibit to the Secretary of State satisfactory evidence that it has entered into a bona fide agreement with a number of persons for insurance, the premiums on which insurance shall amount to not less than twenty-five thousand dollars, of which not less than two thousand dollars shall have been paid in cash, and notes of solvent parties, secured by ample security, shall have been received for the remainder."

Respondent's contention is that this section is binding upon the relator, and that it must comply with its terms.

We have taken into consideration the section which relator refers to as having repealed the statute confidently cited by respondent. In order to have it before us, we insert it here in extenso:

"Any corporation, association, society or fraternal order organized under the laws of this

121 LA.—12

state, whether organized upon the mutual assessment plan or as a stock company, for the purpose of doing the business of industrial life insurance, as in this act defined, shall, before commencing to do business in this state, comply with the laws of this state regulating the manner in which other insurance companies shall be authorized to do business in this state, *except that a deposit of one thousand ($1000) dollars, where the membership is one thousand or less, and, for every additional one thousand members, or fraction of one thousand, added to the membership, an additional deposit of five hundred dollars ($500), until, the total sum of five thousand dollars ($5000) has been deposited, shall be made by companies operating upon the plan and according to the manner specified in this act.*"

We have italicized that portion of the section which relator urges as having a repealing effect.

In reading the act it does seem to convey the meaning for which relator contends. The statute commands that a corporation, before commencing to do business, shall comply with the laws of this state regulating the manner; that is, the Act No. 105, p. 132, of 1898, regulating the manner in which every insurance company shall be authorized to do business except that of a "deposit of one thousand dollars," and so on, as set forth in the italicized portion of the quoted section.

The relator corporation is an industrial life insurance company and comes within the definition laid down in the said act of 1906. The corporate object, as stated in the charter, is by the accumulation of a fund from its members at stated terms less than a month to set apart to be used in providing a weekly cash benefit for disability caused by sickness or accident, or to provide for the attendance of a physician, to buy drugs, and for funeral expenses.

We have stated the purpose of the corporation in order to add that those who become subscribers to such corporation could not very well be expected to accumulate such a fund as required by Act No. 105, p. 132, of 1898. It would not be possible for them to gather the amount sufficient. It would be

an impossibility to obtain subscriptions from a sufficient number of persons willing to bind themselves as subscribers on conditions imposed by the two statutes, if the latter does not in effect repeal the former. No 1,000 names could be found in effect to pay $25 in advance in order to obtain the little assistance the corporation affords. Practically, as shown by the statements of record, the amount collected is entirely too small for it to be possible therefrom to organize a corporation. It is not possible to give effect to both statutes without rendering the last law a dead letter.

The first statute provides for life insurance, and one of its sections refers to mutual insurance, evidently meaning beneficial life insurance and mutual life insurance, each beneficial and considered in the nature of an investment.

As to the industrial life insurance, no one who thinks at all would ever take part in organizing a life insurance company requiring the deposit provided for in section 3 of the act of 1906 and at the same time take steps to make sure $25,000, as before mentioned; all of this only to secure a sick certificate, drugs, funeral expenses, and other very limited relief.

It would be strange, it does seem, if life insurance on a scale so limited would have to comply with the two acts before mentioned, while the larger life insurance companies (either on the stock plan or mutual plan, whereby a substanial return is to be expected) have to comply with only one of the statutes.

The Industrial Life Insurance Company affords only very limited relief. Different from the holders of shares or from membership in a regular life insurance company, the benefit certificate its members hold has very little, if any value. In other words, it is not a beneficial corporation. We refer exclusively to the certificate holders. It may be different with the sum of those who form and give shape to mere insurance schemes. They may find a benefit; but that is not legitimate, and acts of probable wrong on their part are not grounds for condemning a plan of insurance which has effected great good among the poor and the wage earners, in this country and in Europe, who would otherwise be driven to apply for charity, which sometimes does not meet with willing ears and generous hand.

We return to the original proposition only to state that the Legislature of the state of Louisiana must have intended to enact a statute to be enforced. When we consider the details of each of these statutes, we are constrained to conclude that it was not the intention to make that impossible which the statute said could be done. Of two interpretations, that is to be preferred which gives effect to the statute.

The statute states, before commencing to do business in this state, "the following shall be done." Here follows the statement of the purpose. When that has been done which the law requires, should it be construed that the corporation is not in a condition to commence business, although the stated requirement has been complied with?

The defendant respondent urged, as a second ground to justify his refusal to grant a certificate of authority to relator, that the relator corporation is attempting to violate the laws of the state by acquiring and conducting the illegal business hitherto conducted by George D. Geddes Benevolent & Mutual Association and the other alleged corporations specified in the return.

We have naught to do with these alleged illegal corporations, and have not given them the least consideration. We have only considered the relator corporation as originally chartered and organized, having the required number of subscribers, and having offered the deposit bonds required.

When these bonds will have been deposited again, we think that a certificate to carry on a life industrial insurance business should be granted to the relator.

The formalities in each statute before quoted cannot stand together. Practically one neutralizes the other—weighs it down completely. From the language of the last statute, permission to do business is granted after depositing bonds. In the first the condition is impossible, and it is in effect prohibitory.

We adhere to the view that the last statute is complete as relates to that which should be done before applying for the certificate.

For that reason, it is ordered, adjudged, and decreed that the judgment appealed from be avoided, annulled, and reversed.

It is further ordered, adjudged, and decreed that judgment is rendered in favor of relator condemning the Secretary of State to issue the necessary certificate or license under the provisions of Act No. 65, p. 101, of 1906, and Act No. 105, p. 132, of 1898, to the extent that the latter is not inconsistent with the former, in order that the relator, if it continues to comply with the statute, may conduct and carry on an industrial life insurance upon relator's depositing with the Secretary of State $2,000 in state bonds under provisions of Act No. 65, p. 101, of 1906, and that a mandamus to that effect issué.